UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLEMENT D. WILSON,

       Plaintiff,

v.                                               Case No. 1:07-cv-1132
                                                Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is now before the court on plaintiff's appeal and defendant's motion to remand (docket no. 13).

Plaintiff was born on June 23, 1953 and has a 10th grade education (AR 21, 49, 74, 497).[1] He alleged a disability onset date of January 10, 2000, which he later amended to September 1, 2003 (AR 49, 63). Plaintiff had previous employment as a boring machine operator, logger and sawyer (AR 20, 68, 79). Plaintiff identified his disabling conditions as back and neck injuries sustained at a work accident, and back and neck pain and carpal tunnel syndrome in both hands (AR 67-68). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed

---

[1] Citations to the administrative record will be referenced as (AR "page #").

plaintiff's claim *de novo* and entered a decision denying these claims on August 1, 2007 (AR 13-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff was insured for DIB through March 31, 2005, and that he has not engaged in substantial gainful activity since the amended onset date of September 1, 2003 (AR 15-16). Second, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease (status-post lumbar laminectomy); cervical disc herniation; and carpal tunnel syndrome bilaterally (AR 16). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 17).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) to perform a limited range of light work:

> He is unable to lift and/or carry more than 10 pounds frequently and 20 pounds episodically; is unable to perform episodic twisting while holding a load greater than 15 pounds; must have a sit-stand option job; is unable to perform prolonged stooping; and is unable to perform bilateral gross or fine manipulation more than occasionally.

(AR 17). The ALJ found that plaintiff could not perform any of his past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a range of light work in Michigan, including the following jobs: assembler (2,000 jobs) and machine operator (3,000

4

jobs) (AR 21). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 22).

## III. ANALYSIS

### A. Plaintiff's Appeal and Defendant's Motion to remand

Plaintiff raises three issues for review in his own words:

1. There was no evidence to support the ALJ's findings that Plaintiff can do light work and does not satisfy the "Grids" [i.e., the Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2].

2. The ALJ lacked any good reasons to reject plaintiff's testimony regarding his limitations.

3. In questioning plaintiff, the ALJ became an advocate for defendant.

Plaintiff's Brief on Appeal at 2.

In lieu of a brief in response, defendant moved to reverse the ALJ's decision and remand this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). Defendant seeks the following relief:

> Upon receipt of the Court's order, the Appeals Council will remand the matter to an Administrative Law Judge ("ALJ") for a new hearing and decision. The ALJ will be instructed to re-evaluate the claimant's residual functional capacity ("RFC") and provide a better articulation of the claimant's RFC based on all the evidence of record. All opinion evidence will be evaluated, including the State Agency's physical RFC assessment. Also, the ALJ will obtain supplemental Vocational Expert evidence.

Defendant's Motion to Remand. Plaintiff, however, objected to a remand, because it would not address two other errors on his appeal, i.e., that the ALJ lacked valid reasons to reject plaintiff's

5

reported limitations and that the ALJ was biased. Plaintiff's Brief in opposition to remand at pp. 5-8.[2] All three issues are considered below.

### B.     Plaintiff's ability to perform light work

Defendant has conceded that this matter should be remanded to re-evaluate plaintiff's RFC and the vocational evidence. Such a remand would require the Commissioner to re-evaluate plaintiff's claim at Steps four and five. This remand would address plaintiff's concern that the ALJ incorrectly concluded that plaintiff had the RFC to perform light work. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a complete re-evaluation of plaintiff's RFC and his ability to perform other work in the national economy pursuant to Steps four and five of the sequential evaluation.

### C.     ALJ's credibility determination

Plaintiff contends that the ALJ improperly evaluated his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).

---

[2] The resolution of plaintiff's remaining two issues on appeal will have little, if any, bearing on the outcome of this appeal. This court "can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994). Even if plaintiff prevailed on the two other issues, the court cannot award benefits based upon this record, because on remand, the ALJ is going to perform a complete re-evaluation of plaintiff's claim at Steps four and five. Nevertheless, the court will address plaintiff's remaining claims directed at the ALJ.

The ALJ noted plaintiff's testimony that he is unable to work due to a severe back impairment, neck problems and numbness when squeezing his hands (AR 18). In addition, plaintiff reported that his carpal tunnel syndrome causes his hands to become stiff and that he has trouble buttoning shirts and grasping objects, and that holding onto a carton of milk (AR 18). Plaintiff also reported medication side effects, i.e., he takes a muscle relaxant and sometimes becomes dizzy or drowsy (AR 18).

The ALJ concluded that the evidence did not support plaintiff's allegations of debilitating pain, significant side effects from medication and other disabling symptoms (AR 19). The ALJ set forth the following explanation. A treating doctor, Satish Bhadriraju, M.D., stated that plaintiff reported improvement in his symptoms with medication and that with the medication he can function on a day-to-day basis (AR 19). Other physicians stated that because plaintiff's drug screen was positive for cannabinoids, he should not be prescribed narcotics due to the increased risk of misuse, abuse and diversion that might occur (AR 19). In addition, Dr. Sears of the Hackley Pain Clinic stated that plaintiff's pain can be adequately controlled with injection therapy (AR 19).

The ALJ also found that plaintiff's daily activities are consistent with the ability to perform at least light exertional activity, noting that he can cook, clean, shop, watch television, read, take hour-long walks around his pond and care for his personal needs (AR 19). Medical examiners noted that plaintiff did not show any acute distress and was able to do neck and lumbar motions without significant pain behaviors (AR 19-20).

The ALJ also considered the opinions of Todd L. Helle, M.D., who examined plaintiff at his representative's request (AR 20). After the examination, Dr. Helle opined that plaintiff could work with the following restrictions:

7

>Regarding his low back, he should do no repetitive bending or twisting at the waist. He should do no repetitive lifting greater than 10 pounds and no episodic lifting greater than 20 pounds. He should do no episodic twisting while holding a load greater than 15 pounds. He should have a sit/stand option. There should be no prolonged stooping. Overtime should be at his discretion depending on his lumbar symptoms at the end of the shift.
>
>Regarding his neck, the lifting and bending also applies in that bending stresses the neck by forcing the person to compensate by extending it, and the lifting forces are transmitted to the cervical area through the shoulders. In addition, he should do no work at the level of his shoulders or above. Overtime should be at his discretion depending on his cervical symptoms at the end of his shift.
>
>Regarding the bilateral carpal tunnel syndromes, he should limit extreme repetitive use of the upper extremities especially with pinching, grasping, and wrist flexion.
>
> *   *   *
>
>His prognosis medically is good in that I can find nothing, which threatens his life or livelihood in the near future. His prognosis with regard to work is good also providing the above restrictions are allowed.

(AR 239-40).

This evidence indicates that plaintiff is not totally disabled. Rather, he is capable of performing work activities with appropriate restrictions. The ALJ could properly discount plaintiff's credibility after noting contradictions among the medical records, claimant's testimony, and other evidence. *See Walters*, 127 F.3d at 531. There is no compelling reason to disturb the ALJ's current credibility determination, and this claim provides no basis for denying defendant's motion to remand.

**D.    ALJ was biased**

Finally, plaintiff contends that the ALJ was biased, characterizing the ALJ's examination at the administrative hearing as "badgering, repeatedly challenging [p]laintiff on points of marginal relevance." Plaintiff's Response to Motion at p. 7. Hearing officers are presumed to

be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1981). A party can rebut this presumption by a showing of conflict of interest or other specific reason for disqualification, but the burden of establishing a disqualifying interest is upon the person making the contention. *Id. See Davis v. Chater*, No. 95-2235, 1996 WL 732298 at * 4 (6th Cir. Dec. 19, 1996); *NLRB v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1451 (6th Cir. 1985).

Here, plaintiff claims that the ALJ was biased because he (1) accused plaintiff of abusing prescription drugs, (2) "took [p]laintiff to task for marijuana use which, since [p]laintiff freely admitted same, is not an inconsistency that would impeach his testimony nor claimed symptoms," (3) "jumped on [p]laintiff for occupying a 32-acre homestead owned by his son," and (4) "tried to get [p]laintiff to vouch for a doctor and for restrictions, neither of which [p]laintiff had seen in years." Plaintiff's Brief at 5 (internal citations omitted). After reviewing the record, it appears to the court that plaintiff has mischaracterized the ALJ's examination.

First, it does not appear that the ALJ accused plaintiff of abusing drugs. At the hearing, plaintiff testified that he only gets two hours of sleep per night and that the doctors will not prescribe him sleeping pills (AR 502). The ALJ inquired into this issue, and eventually asked plaintiff about his problem with "drug seeking" and taking prescription drugs inappropriately (AR 502-03). Although plaintiff did not think that he "abused them that bad," he admitted that the "vocational rehab folks" felt that he abused the prescriptions (AR 502-03). Second, it is unclear what plaintiff means when he states that the ALJ "took him to task" for marijuana usage. It appears that the ALJ was attempting to place plaintiff's marijuana use in context. The ALJ noted that plaintiff's urine tests showed inappropriate positive results for Methadone and cannabis, and that this violated his "drug count contract" with the prescribers (AR 504-05). When asked about the

9

marijuana, plaintiff stated that he told the doctors that the used it at night to help him sleep and relax (AR 504-05). Plaintiff testified at the current time that he smoked a joint a week at most (AR 506).

Third, plaintiff's statement that the ALJ "jumped" on him for occupying a 32-acre parcel owned by his son is exaggerated. Plaintiff testified that he owned a 32-acre parcel of land (AR 509). The ALJ asked counsel how plaintiff could apply for Title 16 (SSI) when he owned this amount of property (AR 509). Plaintiff then testified that "Well I don't own it, I'm still paying on it, I mean" (AR 509). Then plaintiff stated that "it's not in my name, it's in my son's name" (AR 509). Plaintiff also stated that his son "bought my house and everything" when it looked like he would lose the house (AR 509). Plaintiff's counsel explained that plaintiff's son was a banker who redeemed the house during mortgage foreclosure proceedings (AR 509-10). The ALJ felt that additional questions were warranted (AR 510). The court agrees. Plaintiff sought benefits based upon his indigency, yet testified that he owned 32 acres. Based on these circumstances, the ALJ could properly inquire into plaintiff's ownership interest in the acreage.

Fourth, the ALJ made reasonable inquiries into plaintiff's medical records, which as recently as 2006 stated that plaintiff could work with restrictions (AR 511). Plaintiff agreed that he would be able to perform work within the restrictions posed by the doctors (AR 511-12). Plaintiff also admitted that he has not looked for jobs within the restrictions since the date he stopped drawing workman's compensation (AR 512). Finally, the court finds no error in the ALJ asking plaintiff whether his neurosurgeon, Dr. Helle, was providing appropriate assistance (AR 512-13).

Plaintiff's allegations do not demonstrate a conflict of interest, bias or other reason for disqualification of the ALJ. Rather, the record reflects that the ALJ made appropriate inquiries

into plaintiff's medical history and financial status. Accordingly, plaintiff's claim of bias is also without merit and provides no basis to deny defendant's motion to remand.

**IV.     Recommendation**

For these reasons, I respectfully recommend that defendant's motion to remand (docket no. 13) be **granted** and that the Commissioner's decision be **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's RFC and his ability to perform other work in the national economy as required by Steps four and five of the sequential evaluation.


Dated:  December 4, 2008                              /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).